UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GRENDENE USA, INC., a Delaware
Corporation,

    Plaintiff,

v.

JAMES W. BRADY, an individual;
PATRICIA M. BRADY, an individual;
PATRICIA MARIA DUHART MARTINS
BRADY a/k/a PATRIXIA MARTINS a/k/a
PATRIXIA BRADY, an individual; and, MADE
IN BRAZIL, INC., a California Corporation

    Defendants.

CASE NO.: 6:15-cv-3140rl-18GJK

FILED 2015 FEB 27 PH 3:26

_____/

## COMPLAINT FOR COMMON LAW TRADEMARK INFRINGEMENT, STATUTORY TRADEMARK INFRINGEMENT, and STATUTORY UNFAIR COMPETITION

Plaintiff, Grendene USA, Inc., a Delaware Corporation having its principal place of business in Orlando, Florida, hereby sues Defendants, James W. Brady, Patricia M. Brady, Patricia Maria Duhart Martins Brady a/k/a Patrixia Martins a/k/a Patrixia Brady and Made In Brazil, Inc. and alleges as follows:

### JURISDICTION AND VENUE

1. This action arises under the Federal Lanham Act, 15 U.S.C. §§ 1114, 1117 and 1125(a), and the common law. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332(a)(i) and principles of pendent jurisdiction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Defendants are individuals and a corporation who have transacted business in this state and

1

judicial district and the conduct complained of herein has occurred and is occurring, in part, in this judicial district and is directed at Plaintiff, Grendene USA, Inc. in this judicial district.

## NATURE OF THE ACTION

3. Plaintiff, Grendene USA, Inc. seeks damages and injunctive relief for Defendants' brazen and willful acts of trademark infringement. Grendene USA, Inc. is the wholly-owned subsidiary of Grendene, S.A. (collectively, "Grendene"), a Brazilian company that manufactures a wide range of fashion sandals and other footwear sold in more than 100 countries. Grendene USA, Inc., incorporated in 1982, annually sells millions of dollars' worth of fashion sandals to retailers across the United States.

4. Since late 2010, Grendene's IPANEMA brand sandals have been offered for sale nationally in the United States. Grendene owns two federal trademark registrations for IPANEMA for "footwear."

5. Grendene has created a separate market identity for its IPANEMA brand, which it markets and sells independently of its other brands. In aid of that effort, it created a separate Web site, www.IpanemaUSA.com, for its valuable brand and adopted as a motif a distinctive pattern (the "Ipanema Pattern") that it has used to identify its IPANEMA brand sandals in virtually every way imaginable. The Ipanema Pattern covers the top side of the soles of all IPANEMA brand sandals and is sometimes molded into the bottom side as well; it sometimes additionally appears on the sandals' straps; it appears prominently on the home page, as well as interior pages, of the www.IpanemaUSA.com Web site; it is prominently displayed on all product-line catalogs distributed to retailers; and it is also used on point-of-purchase displays provided by Grendene USA, Inc. to retailers.

6. On February 15, 2013, Grendene USA, Inc. applied to register its Ipanema Pattern

on the Principal Register of the United States Patent and Trademark Office ("USPTO"), claiming a first-use-in-commerce date of January 31, 2011. That application was approved and, on September 9, 2014, Grendene USA, Inc. was issued Certificate of Registration No. 4,599,638 (the "Ipanema Pattern Mark"). A true and correct copy of the certificate of registration of the Ipanema Pattern Mark, including a depiction of the mark, is attached as Exhibit A and is incorporated herein by reference.

7.  Defendants sold "Ipanema" brand swimwear, allegedly commencing in late 1991, until 2006. In mid-2006, they announced that they wished to leave the swimwear business and, in December 2006, sold their remaining inventory to a jobber to liquidate their inventory. In September 2013, ostensibly to provide employment for Defendant, Patricia Maria Duhart Martins Brady, who had graduated from college but was unemployed, Defendants decided to re-enter the swimwear market by exhibiting at trade shows in, *inter alia*, Orlando and Miami, Florida, beginning in July 2014.

8.  At issue in this action is a tactic that Defendants are using to unfairly trade on the reputation and goodwill Grendene's IPANEMA brand sandals have earned. Defendants mounted a huge display of Grendene's Ipanema Pattern Mark in their booth during at least one trade show in Florida. Notwithstanding that Grendene sent a written cease-and-desist demand to Defendants, the response from their counsel not only failed to agree to that request but conveyed threats directed to Grendene. Grendene USA observed no further trade show use of its Ipanema Pattern Mark after its federal registration issued in September 2014 and in spite of the threats in response to the cease-and-desist demand letter, assumed that Defendants were complying with the letter.

9.  However, in February 2015, Defendants produced in another action new hang

tags making prominent use of the Ipanema Pattern Mark on products to be sold for the 2015 summer season. The hang tags were marked as "attorneys' eyes only," reflecting that they had not yet been used publicly. Moreover, they were produced long after the close of fact discovery in that action, reflecting that they were newly created. Defendants' counsel refused to answer any questions concerning their intended use and indicated that their depictions were not responsive to any discovery requests (which had required the production of all hang tags in existence as of December 2014), thereby further confirming that the hang tags were newly created. If so, the inference is inescapable that defendants plan to use them on products to be offered for sale this coming summer.

10. Based on Defendants' outrageous conduct and total disregard for the trademark laws, Grendene is forced to bring this action seeking temporary, preliminary, and permanent injunctive relief, as well as treble damages, costs, and attorneys' fees based on defendants' deliberate, willful, and extraordinary conduct.

## PARTIES

11. Plaintiff, Grendene USA, Inc. ("Grendene USA") is a Delaware corporation having its headquarters, principal place of business, nexus of operations, and virtually all its employees in Orlando, Florida.

12. Defendant James W. Brady is an individual who resides in San Diego County, California. He is the husband of Defendant, Patricia M. Brady, the father of Defendant, Patricia Maria Duhart Martins Brady, and a 50-percent owner of Defendant, Made in Brazil, Inc.

13. Defendant, Patricia M. Brady is an individual who resides in San Diego County, California. She is the wife of Defendant, James W. Brady, the mother of Defendant, Patricia

Maria Duhart Martins Brady, and, either alone or in combination with her daughter, a 50-percent owner of Defendant, Made in Brazil, Inc.

14. Defendant, Patricia Maria Duhart Martins Brady, who uses the aliases "Patrixia Martins" and "Patrixia Brady," is the daughter of Defendants, James W. Brady and Patricia M. Brady and is currently the only full-time employee of Defendant, Made in Brazil, Inc. She is referred to herein as "Patrixia Brady."

15. Defendant, Made in Brazil, Inc. ("Made in Brazil") is a California corporation having its principal place of business in a garage at a residence owned by James W. Brady and Patricia M. Brady in San Diego County, California. Defendant, Patricia M. Brady is the president of Made in Brazil; Defendant, James W. Brady serves as its vice-president.

16. Upon information and belief, at all times relevant herein, defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her, or its agency and was subject to and under the supervision of each of his, her, or its co-defendants.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17. Grendene S.A. was founded in Brazil in 1971. It now employs more than 25,000 persons and manufactures fashion sandals sold at more than 50,000 locations in more than 100 countries.

18. In 1982, Grendene S.A. incorporated a wholly-owned subsidiary, now named Grendene USA, Inc., in Delaware. Grendene USA purchases sandals made by Grendene S.A. in Brazil and imports them into the United States. It markets several brands of sandals made by Grendene U.S.A. and sells them to retailers across the country. It also engages in direct sales to

consumers through the Internet. All but three of Grendene USA's employees work at its Orlando, Florida facility.

19. In 2000, Grendene S.A. introduced a new, "Ipanema" line of sandals in Brazil. Ipanema is an area of Rio de Janeiro, Brazil made famous internationally by a song written about Helo Pinheiro, a resident of Rio de Janeiro. That song was, of course, *The Girl from Ipanema*. Within Brazil, Ipanema is known as the trendy, fashionable district of Rio de Janeiro. Because Grendene S.A. was selling far more sandals in 2000 for purchase by residents of Brazil than for purchase by residents of any other country and because it was a Brazilian company selling a fashion product, it selected "Ipanema" as the name for its new sandal line. It thereafter sought to register "Ipanema" as a mark for footwear in countries around the world where its footwear was sold.

20. When Grendene USA attempted to register IPANEMA as a trademark for footwear in the United States, it encountered a problem. The Ipanema Shoe Corporation had obtained a federal registration of IPANEMA for shoes in 1980. Although Ipanema Shoe Corporation was selling IPANEMA brand shoes, including sandals and thong sandals, nationally, it failed to timely file an affidavit of continued use in the USPTO necessary to keep its registration alive and, as a consequence, the USPTO deemed its IPANEMA mark abandoned in 1990. Seeing an opportunity, Defendants, James W. Brady and Patricia M. Brady, through Defendant, Made in Brazil, Inc., applied to register IPANEMA for "swimwear" on an intent-to-use basis, and allegedly began using IPANEMA as a mark for swimwear in late 1991.

21. Ipanema Shoe Corporation's lawyers then woke up and submitted a new application to the USPTO, seeking to obtain a new registration of IPANEMA for "footwear." The USPTO initially rejected Ipanema Shoe Corporation's new application to

register its longtime mark based on a likelihood of confusion with IPANEMA as used for swimwear.

22. Predictably, Ipanema Shoe Corporation initiated a proceeding seeking cancellation of Made in Brazil's registration. To resolve that litigation, in 1994 Defendant, James W. Brady signed a letter to be given to the USPTO consenting to Ipanema Shoe Corporation's application to register IPANEMA for "footwear" and, in 1995, executed a settlement agreement on behalf of Made in Brazil pursuant to which Made in Brazil agreed that Ipanema Shoe Corporation, as well as its successors and assigns, would forever have the right to sell "all footwear" using the IPANEMA mark and agreeing that Made in Brazil, as well as its successors and assigns, would forever forebear from selling any footwear using the IPANEMA mark. Thereafter, the Ipanema Shoe Corporation assigned the IPANEMA footwear mark to Utopia Marketing, Inc., which, in turn, assigned it to the Consolidated Shoe Corporation.

23. In 2004, while attempting to sort out the rights to the IPANEMA mark for footwear, Grendene's attorneys contacted Defendant, James W. Brady and were told by him that he claimed only swimwear rights in the mark. Accordingly, Grendene entered into negotiations with the Consolidated Shoe Corporation that in 2007 resulted in Grendene USA's purchase of an assignment of the federally registered IPANEMA footwear mark for half a million dollars.

24. By then, Defendants, whose efforts to sell "Ipanema" brand swimsuits had never met with much commercial success and whose sales had entered into a steep, steady decline after 1996, finally resulting in the liquidation of their assets in 2006, were actively trying to sell an assignment or license of their IPANEMA mark, as well as their THE GIRL FROM IPANEMA mark, to anyone who would have them. They did not succeed.

25. After their swimsuit business disappeared, Defendants James W. Brady and

Patricia M. Brady launched two new business ventures. They decided to become trademark trolls, suing every company subject to jurisdiction in the United States that used the term "Ipanema" in association with swimwear, suing 17 companies between 2007 and 2010 (and, for good measure, suing their own attorneys as well). They also founded a very expensive (and equally profitable) alcohol treatment center.

26. In March 2012, Defendants, James W. Brady and Patricia M. Brady filed suit against both Grendene and Grendene S.A. alleging trademark infringement and related claims arising out of Grendene's use of its federally registered IPANEMA Marks. Defendants ceased their attempts to assign or license their purported IPANEMA mark when they filed suit.

27. In aid of their trademark troll enterprise, all Defendants embarked on a scheme to create the appearance of confusion to support their litigation against Grendene. Among other things, in 2014 they abandoned the www.IpanemaSwimWear.com Web site domain name and, instead, mimicked the Web site domain names that Grendene USA uses to market its IPANEMA sandals—www.IpanemaUSA.com—by adopting a new Web site domain name for themselves, at www.IpanemaUS.com. Grendene USA has filed a complaint with the World Intellectual Property Organization ("WIPO") concerning that stratagem. A true and correct copy of Grendene USA's WIPO complaint, without exhibits, is attached as Exhibit B, and is incorporated herein by reference. Further, Defendants have falsely and misleadingly alleged on their social media Instagram account, with a link to it included on their www.IpanemaUS.com Web site, that they have sold both swimsuits and *footwear* since the *mid-1970s*, which is when Grendene's predecessor owner of the IPANEMA mark, not Plaintiffs, commenced doing business in the United States. Further still, they included a photograph of a bikini- clad woman with the legend

"Ipanema USA." A true and correct copy of Defendants' misleading Instagram post is attached as Exhibit C and is incorporated herein by reference.

28. In July 2014, Defendants suddenly began exhibiting a purported 2015 line of bikinis at trade shows. When they did so, they displayed prominently Grendene's Ipanema Pattern Mark in their booths, including at the Miami Swim Show held at the Miami Beach Convention Center in Florida. A copy of a photograph that truly and accurately depicts defendants' booth at that trade show is attached as Exhibit D. To the best of Grendene USA's knowledge, such trade show uses stopped when the USPTO granted registration of Grendene USA's Ipanema Pattern Mark in September 2014. At the same time, Grendene USA ceased to see any further misappropriation or misuses of its Ipanema Pattern Mark by Defendants and believed that Defendants had possibly ceased their infringing activities based on the advice of their counsel.

29. By letter dated December 17, 2014 (a true and correct copy of which is attached as Exhibit E and incorporated herein by reference), Grendene USA asked that Defendants cease and desist using the Ipanema Pattern Mark to promote Defendants' products. In doing so, Grendene USA sought an assurance that Defendants' infringing conduct would not be repeated.

30. By letter from Defendants' attorneys dated December 30, 2014 (a true and correct copy of which is attached as Exhibit F and incorporated herein by reference), Defendants not only rejected that request (terming it "despicable" and in "bad faith"), but vowed "to seek to recover all expenses and attorneys' fees" incurred if Grendene were to bring a "frivolous" proceeding to protect its trademark from defendants' misuse of it.

31. Because Defendants refused to cease and desist from their unlawful use of Grendene's federally registered Ipanema Pattern Mark, Grendene became concerned that such

use might resume.

32. However, it was not until February 2015, when Defendants made a supplemental document production well after the close of fact discovery in their trademark troll suit against Grendene, that Grendene's fears were confirmed. Defendants produced images of hang tags and advertising for both their Ipanema brand swimsuits and their The Girl From Ipanama brand products that make prominent use of the Ipanema Pattern Mark. The artwork for the hang tags were designated as "Attorneys Eyes Only," meaning that they had not yet been used in commerce. Defendants' Ipanema and The Girl From Ipanema brand products include swimsuits, dresses, cover-ups, shorts, sarongs, and skirts.

33. Grendene USA thereafter sought to find out when the hang tag designs were created, whether the hangtags had already been used in commerce and, if so, when such use commenced, raising those questions with Defendants' counsel by e-mail messages (a true and correct copy of which are attached as Exhibit G) sent February 17, 2015. By e-mail message dated February 19, 2015 (a true and correct copy of which is attached as Exhibit H), defendants' counsel declined to provide any information in response to those questions unless Grendene USA could point to specific discovery requests to which the information would be responsive. In so responding, Defendants' counsel implicitly admitted the obvious: because the hang tag designs were not included in the supplemental document productions made before discovery closed on December 30, 2014, they were not then in existence and have been created only since then. Defendants' counsel have since failed and refused to respond to a follow-up message from Grendene seeking information concerning the intended use of the hang tags, and have provided no information whatsoever concerning the hang tags. Attached as Exhibit I is a true and correct copy of the follow up message. The hang tags, having just been created, must therefore be

intended for future use. Such inference is logical in that defendants sell products intended for use during the summer and retail stores have not yet begun offering their summer clothing lines. Further, it is apparent that such use will be made in this Judicial District, inasmuch as Defendants recently modified their Website to reflect that their products are now being sold at retail in Naples, Florida. Attached as Exhibit J is a true and correct copy of the "retail store location" page on Defendants' web site, printed on February 26, 2015.

## COUNT I

### (Common Law Trademark Infringement Against All Defendants)

34. Grendene USA repeats and realleges the allegations set forth in paragraphs 1 through 34, above.

35. Grendene's Ipanema Pattern Mark is arbitrary as applied to sandals and therefore is inherently distinctive.

36. Grendene's Ipanema Pattern Mark has been used and promoted extensively by Grendene since January 31, 2011, and has achieved a strong secondary meaning as identifying Grendene USA's products.

37. Defendants had actual knowledge of Grendene's use of its Ipanema Pattern Mark before stealing it to use in the conduct of their business. Defendants have testified in another proceeding that they accessed Grendene USA, Inc.'s www.IpanemaUSA.com Web site many dozens of times in the years preceding the commencement of their unlawful use of Grendene's Ipanema Pattern Mark. Defendants admitted that The Ipanema Pattern Mark appeared on the home page of that Web site and appeared extensively throughout it. Further, Defendants testified that their purpose in accessing the Web site was to see what sandals Grendene was offering for sale. Significantly, every one of those sandals bore the Ipanema Pattern Mark. Defendants also

had the opportunity to view Grendene's sandals marketed using the Ipanema Pattern Mark at trade shows.

38. Defendants have implicitly acknowledged that Grendene's Ipanema Pattern Mark and IPANEMA word mark have achieved a strong secondary meaning by copying and extensively using both marks to advertise their products sold under their Ipanema and The Girl From Ipanema brands.

39. In suing Grendene for alleged trademark infringement, Defendants have alleged that a likelihood of confusion is caused by the use of identical marks to denote and promote both their products and Grendene USA's products. By deliberately associating their products with Grendene USA's products in every way they can, Defendants are deliberately attempting to create a likelihood of confusion between their products marketed and advertised using the Ipanema Pattern Mark and Grendene USA's products.

40. Defendants' use of the Ipanema Pattern Mark has been and is without the consent or approval of Grendene USA.

41. Defendants' aforementioned acts have injured, and are continuing to injure, Grendene USA irreparably and have damaged Grendene USA in an amount to be determined at trial.

42. Such irreparable injury will continue unless Defendants are temporarily, preliminarily, and permanently enjoined by the Court from further violation of Grendene USA's rights, for which Grendene USA has no adequate remedy at law.

## COUNT II
(Statutory Trademark Infringement Under 15 U.S.C. § 1114 Against All Defendants)

43. Grendene USA repeats and re-alleges the allegations of paragraphs 1 through 43,

above.

44. Grendene USA's Ipanema Pattern Mark is federally registered, as reflected in Certificate of Registration No. 4,599,638.

45. Grendene USA is informed and believes, and thereupon alleges, that Defendants are preparing to infringe the Ipanema Pattern Mark by making it a prominent design element on product hang tags that defendants will use to identify their goods this coming summer.

46. Defendants are planning to do so with the intent to cause confusion and mistake among consumers and the public, and to deceive consumers and the public into believing that defendants' products are associated with, or are sponsored or approved by, Grendene when they are not.

47. Defendants' knowing and deliberate use of Grendene USA's Ipanema Pattern Mark is being, or will be, made without the consent or approval of Grendene USA and thus defendants have willfully violated, or will willfully violate, 15 U.S.C. § 1114.

48. Defendants' aforementioned acts have injured or will injure Grendene USA in an amount to be determined at trial.

49. By their actions, Defendants have irreparably injured, and are continuing to or will injure, Grendene USA irreparably. Such irreparable injury will continue unless Defendants are temporarily, preliminarily and permanently enjoined by the Court from further violation of Grendene USA's rights, for which Grendene USA has no adequate remedy at law.

## COUNT III

**(False Designation of Origin Under 15 U.S.C. § 1125(a) Against All Defendants)**

50. Grendene USA repeats and re-alleges paragraphs 1 through 50, above, as though set forth at length.

51. Defendants' use of Grendene USA's Ipanema Pattern Mark in connection with its sale of its products in the same trademark class as the products sold by Grendene USA makes Defendants' use of the Ipanema Pattern Mark confusingly similar to Grendene USA's use of its mark and has created or will create a false designation of origin by suggesting that Defendants' products are offered, sold and/or promoted in commerce with Grendene's products.

52. Defendants are doing so with the intent to compete unfairly with Grendene USA; trade upon Grendene's reputation by causing confusion and mistake among consumers and the public; mislead the Southern District of California trial court by manufacturing confusion between Grendene USA's products and Defendants' products at issue in a legal proceeding that is *sub judice* (but which does not involve the Ipanema Pattern Mark); and deceive the public into believing that Defendants' products are associated with, or are sponsored or approved by, Grendene when they are not.

53. Defendants had actual knowledge of Grendene USA's ownership and prior use of the Ipanema Pattern Mark and further knew and know that their use of the Ipanema Pattern Mark is without Grendene USA's consent, and therefore is in willful violation of 15 U.S.C. § 1125(a).

54. Defendants' aforementioned acts have injured, and will continue to injure, Grendene USA and will and have damaged it in an amount to be determined at trial.

55. By Defendants' actions, Grendene USA has been irreparably injured, and continues to be irreparably injured. Such irreparable injury will continue unless Defendants are temporarily, preliminarily, and permanently enjoined by this Court from further violation of Grendene USA's right, for which Grendene USA has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Grendene USA respectfully requests that the Court award it the

following relief:

A. That the Court enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants, their agents, servants, employees, successors, assigns, and all persons in active concert or participation with any of them, who receive actual notice of the injunction by personal service or otherwise, from using the Ipanema Pattern Mark in any way to identify, advertise, promote, market, display, or sell their goods; creating the impression that their goods originate from, or are associated with or approved by, Grendene, or are connected in any way with Grendene; unfairly competing with Grendene USA in any manner whatsoever; or causing a likelihood of confusion with Grendene, or injury to Grendene USA's business reputation, through the use of the Ipanema Pattern Mark;

B. That the Court render a final judgment declaring that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Grendene USA's Ipanema Pattern Mark and finding that this case is exceptional;

C. That the Court render a final judgment declaring that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(a) by falsely designating the origin of their goods and unfairly competing with Grendene USA through the marketing, sale, and promotion of their products using the Ipanema Pattern Design;

D. That Defendants be directed to file with this Court and serve on Grendene within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

E. That Defendants be required to account to Grendene for any and all profits derived by Defendants and all damages sustained by Grendene USA by virtue of Defendants'

acts complained of herein;

F. That Defendants be ordered to pay to Grendene USA a reasonable royalty for Defendants' past use of the Ipanema Pattern Design, subject to proof at trial; and

G. That Defendants be ordered to pay to Grendene its costs of suit, attorneys' fees, and treble damages pursuant to 15 U.S.C. § 1117.

## JURY TRIAL DEMAND

Grendene hereby demands trial by jury on all issues that may be tried to a jury.

DATED this 27th day of February. 2015.

          Respectfully Submitted,

          BEUSSE WOLTER SANKS & MAIRE, P.A.
          390 North Orange Avenue
          Suite 2500
          Orlando, Florida 32801
          Telephone: (407) 926-7700
          Facsimile: (407) 926-7720
          Email: tsanks@iplawfl.com
          Attorneys for Plaintiff, GRENDENE USA, INC.

By: _____
     Perry M. Sanks
     Florida Bar No.: 0154430