UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GRENDENE USA, INC., a Delaware
Corporation,

      Plaintiff,                  CASE NO.: 6:15-cv-314-Orl-41GJK

v.

JAMES W. BRADY, an individual;
PATRICIA M. BRADY, an individual;
PATRICIA MARIA DUHART MARTINS
BRADY a/k/a PATRIXIA MARTINS a/k/a
PATRIXIA BRADY, an individual; and, MADE
IN BRAZIL, INC., a California Corporation,

      Defendants.

---

**AMENDED COMPLAINT FOR: (1) COMMON LAW TRADEMARK
INFRINGEMENT; (2) STATUTORY TRADEMARK INFRINGEMENT; (3)
STATUTORY UNFAIR COMPETITION; (4) FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES; and
DEMAND FOR JURY TRIAL**

      Plaintiff Grendene USA, Inc., a Delaware Corporation having its principal place of

business in Orlando, Florida, complains and alleges as follows:

**Jurisdiction and Venue**

      1.     This action arises under the federal Lanham Act, 15 U.S.C. §§ 1114, 1117 and

1125(a), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §

501.204, and the common law.  This Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 1331, 1332(a)(i) and principles of pendent jurisdiction under 28 U.S.C. § 1367..

      2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and

(c).  Defendants are individuals and a corporation who have transacted business in this state and

judicial district and the conduct complained of herein has occurred and is occurring, in part, in this judicial district and is directed at plaintiff Grendene USA, Inc. in this judicial district.

**Nature of the Action**

3.      Plaintiff Grendene USA, Inc. seeks damages and injunctive relief for defendants' brazen and willful acts of trademark infringement, coupled with their refusal to stop.  Grendene USA, Inc. is the wholly-owned subsidiary of Grendene, S.A. (collectively, "Grendene"), a Brazilian company that manufactures a wide range of fashion sandals and other footwear sold in more than 100 countries.  Grendene USA, Inc., incorporated in 1982, annually sells millions of dollars' worth of fashion sandals to retailers across the United States.

4.      Since late 2010, Grendene's IPANEMA brand sandals have been offered for sale nationally in the United States.  Grendene owns two federal trademark registrations for IPANEMA for "footwear."

5.      Grendene has created a separate market identity for its IPANEMA brand, which it markets and sells independently of its other brands.  In aid of that effort, it created a separate Web site, www.IpanemaUSA.com, for its valuable brand and adopted as a motif a distinctive pattern (the "Ipanema Pattern Trademark") that it has used to identify its IPANEMA brand sandals commercially and in commerce in virtually every way imaginable.  The Ipanema Pattern Trademark covers the top side of the soles of all IPANEMA brand sandals and is sometimes molded into the bottom side as well; it sometimes additionally appears on the sandals' straps; it appears prominently on the home page, as well as interior pages, of the www.IpanemaUSA.com Web site; it is prominently displayed on all product-line catalogs distributed to retailers; and it is also used on point-of-purchase displays provided by Grendene USA, Inc. to retailers.

6.     On February 15, 2013, Grendene S.A. applied to register its Ipanema Pattern Trademark on the Principal Register of the United States Patent and Trademark Office ("USPTO"), claiming a first-use-in-commerce date of January 31, 2011.  That application was approved and, on September 9, 2014, Grendene S.A. was issued Certificate of Registration No. 4,599,638 (the "Ipanema Pattern Trademark").   A true and correct copy of the certificate of registration of the Ipanema Pattern Trademark, including a depiction of the mark, is attached as Exhibit A and is incorporated herein by reference.

7.     On April 2, 2015, Grendene S.A. assigned the Ipanema Pattern Trademark, together with the goodwill of the business symbolized by that trademark and all rights of action for infringement thereof occurring in the past, present and future, to plaintiff Grendene USA, Inc. A true and correct copy of that assignment, which has been recorded by the USPTO, is attached as Exhibit B and is incorporated herein by reference.

8.     Defendants sold "Ipanema" brand swimwear, allegedly commencing in late 1991, until 2006.  In mid-2006, they announced that they wished to leave the swimwear business and, in December 2006, sold their remaining inventory to a jobber to liquidate their inventory.  In September 2013, ostensibly to provide employment for defendant Patricia Maria Duhart Martins Brady, who had graduated from college but was unemployed, defendants decided to re-enter the swimwear market by exhibiting at trade shows in, *inter alia*,  Orlando and Miami, Florida, beginning in July 2014.

9.     At issue in this action is a tactic that defendants are using to unfairly attempt to influence the outcome of a pending judicial proceeding in the Southern District of California and, in the process, trade on the reputation and goodwill Grendene's IPANEMA brand sandals have earned.  At least once, defendants have mounted a huge display of plaintiff Grendene

USA's Ipanema Pattern Trademark in their booth at a trade show in Florida.  Such commercial use in commerce of the Ipanema Pattern Trademark was unauthorized and was made without Grendene's consent or prior knowledge.  Notwithstanding that Grendene sent a written cease-and-desist demand to defendants, the belligerent response from their counsel not only failed to express any agreement to that request but conveyed legal threats directed to Grendene.

10.     In February 2015, defendants produced in another action new hang tags making prominent use of the Ipanema Pattern Trademark on products to be sold for the 2015 summer season.  Plaintiff Grendene USA believed that one hang tag had been marked as "Confidential--Attorneys' Eyes Only" because it was included within a collection of hang tags incorporating elements of the Ipanema Pattern Trademark that were so designated.  Plaintiff's counsel wished to proceed cautiously because defendants' counsel have repeatedly sought sanctions for disclosing information claimed to be confidential, including information that defendants themselves filed multiple times in the San Diego Action without seeking sealing or designating the information as confidential.  Indeed, defendants have sought sanctions based on the alleged use of "Attorneys' Eyes Only" information in plaintiff's Grendene USA's initial complaint herein.  Several other designs that incorporated an element of the Ipanema Pattern Trademark were also designated as "Confidential—Attorneys' Eyes Only," notwithstanding that defendants added that design element to the home page of their Web site last year, thus reflecting that those designs had not yet been disclosed publicly even though all elements of those designs have been. Defendants' counsel indicated that Grendene USA's understanding was correct by agreeing to meet and confer concerning the removal of that designation.

11.     Another hang tag that made very prominent use of Grendene's Ipanema Pattern Trademark was *not given any confidentiality designation*, thus reflecting that it *had* been used.

Moreover, the hang tags were produced long after the close of fact discovery in that action, reflecting that they were newly created.  Defendants' counsel refused to answer any questions concerning their intended use and indicated that the hang tag depictions were not responsive to any discovery requests (which had required the production of all hang tags in existence as of December 2014), further confirmed that the hang tags were newly created.  The inference that defendants have already used, and will use, them on products to be offered for sale is inescapable.

12.     Based on defendants' outrageous conduct and total disregard for the trademark laws, plaintiff Grendene USA, Inc. was forced to bring this action.  It seeks preliminary and permanent injunctive relief, as well as treble damages, costs, and attorneys' fees, based on defendants' deliberate, willful, and extraordinary conduct.

**Parties**

13.     Plaintiff Grendene USA, Inc. ("Grendene USA") is a Delaware corporation having its headquarters, principal place of business, nexus of operations, and virtually all its employees in Orlando, Florida.

14.     Defendant James W. Brady is an individual who resides in San Diego County, California.  He is the husband of defendant Patricia M. Brady, the father of defendant Patricia Maria Duhart Martins Brady, and a 50-percent owner of defendant Made in Brazil, Inc.

15.     Defendant Patricia M. Brady is an individual who resides in San Diego County, California.  She is the wife of defendant James W. Brady, the mother of defendant Patricia Maria Duhart Martins Brady, and, either alone or in combination with her daughter, a 50-percent owner of defendant Made in Brazil, Inc.

16.     Defendant Patricia Maria Duhart Martins Brady, who uses the aliases "Patrixia Martins" and "Patrixia Brady," is the daughter of defendants James W. Brady and Patricia M. Brady and is currently the only full-time employee of defendant Made in Brazil, Inc.  She is referred to herein as "Patrixia Brady."

17.     Defendant Made in Brazil, Inc. ("Made in Brazil") is a California corporation having its principal place of business in a garage at a residence owned by James W. Brady and Patricia M. Brady in San Diego County, California.  Defendant Patricia M. Brady is the president of Made in Brazil; defendant James W. Brady serves as its vice-president.

18.     Grendene USA is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1-10, inclusive, or any of them, and therefore sues those defendants, and each of them, by fictitious names.  Grendene USA will seek leave of court to amend this complaint to allege the true names and capacities of the defendants identified herein as Does 1-10 when the identities and status of those defendants are ascertained.

19.     Upon information and belief, at all times relevant herein, defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her, or its agency and was subject to and under the supervision of each of his, her, or its co-defendants.

**Facts Common to All Claims for Relief**

20.     Grendene S.A. was founded in Brazil in 1971.  It now employs more than 25,000 persons and manufactures fashion sandals sold at more than 50,000 locations in more than 100 countries.

21.     In 1982, Grendene S.A. incorporated a wholly-owned subsidiary, now named Grendene USA, Inc., in Delaware.   Grendene USA purchases sandals made by Grendene S.A. in

Brazil and imports them into the United States.  It markets several brands of sandals made by Grendene U.S.A. and sells them to retailers across the country.  It also engages in direct sales to consumers through the Internet.  All but three of Grendene USA's employees work at its Orlando, Florida facility.

22.     In 2000, Grendene S.A. introduced a new, "Ipanema" line of sandals in Brazil.  Ipanema is an area of Rio de Janeiro, Brazil made famous internationally by a song written about Helo Pinheiro, a resident of Rio de Janeiro.  That song was, of course, *The Girl from Ipanema.*  Within Brazil, Ipanema is known as the trendy, fashionable district of Rio de Janeiro.  Because Grendene S.A. was selling far more sandals in 2000 for purchase by residents of Brazil than for purchase by residents of any other country and because it was a Brazilian company selling a fashion product, it selected "Ipanema" as the name for its new sandal line.  It thereafter sought to register "Ipanema" as a mark for footwear in countries around the world where its footwear was sold.

23.     When Grendene attempted to register IPANEMA as a trademark for sandals in the United States, it encountered a problem in that the IPANEMA trademark was already registered and in use for footwear. The Ipanema Shoe Corporation had obtained a federal registration of IPANEMA for shoes in 1980.  Although the Ipanema Shoe Corporation was selling IPANEMA brand shoes, including sandals and thong sandals, nationally, it failed to timely file an affidavit of continued use in the USPTO necessary to keep its registration alive and, as a consequence, the USPTO deemed its IPANEMA trademark abandoned in 1990.  Seeing an opportunity, defendants James W. Brady and Patricia M. Brady, through defendant Made in Brazil, Inc., applied to register IPANEMA for "swimwear" on an intent-to-use basis in 1991, and allegedly began using IPANEMA as a mark for swimwear in late 1991.

24.     The Ipanema Shoe Corporation's lawyers then woke up and submitted a new application to the USPTO, seeking to obtain a new registration of IPANEMA for "footwear."  The USPTO initially rejected the Ipanema Shoe Corporation's application to register its longtime mark based on a likelihood of confusion with IPANEMA as used for swimwear.

25.     Predictably, the Ipanema Shoe Corporation initiated a proceeding seeking cancellation of Made in Brazil's registration.  To resolve that litigation, in 1994 defendant James W. Brady signed a letter to be given to the USPTO consenting to the Ipanema Shoe Corporation's application to register IPANEMA for "footwear" and, in 1995, executed a settlement agreement on behalf of Made in Brazil pursuant to which Made in Brazil agreed that the Ipanema Shoe Corporation, as well as its successors and assigns, would forever have the right to sell "all footwear" using the IPANEMA trademark and agreeing that Made in Brazil, as well as its successors and assigns, would forever forebear from selling any footwear using the IPANEMA trademark.  On August 1, 1995, the USPTO granted the Ipanema Shoe Corporation's application to register IPANEMA for "footwear" pursuant to Certificate of Registration No. 1,908,543 (the '543 Trademark).   Thereafter, the Ipanema Shoe Corporation assigned the IPANEMA footwear trademark to Utopia Marketing, Inc., which, in turn, assigned it to the Consolidated Shoe Corporation.

26.     In 2004, while attempting to sort out the rights to the IPANEMA trademark for footwear, Grendene's attorneys contacted defendant James W. Brady and were told by him that he claimed only swimwear rights in the mark.  Accordingly, Grendene entered into negotiations with the Consolidated Shoe Corporation that in 2007 resulted in Grendene USA's purchase of an assignment of the federally registered IPANEMA footwear mark for half a million dollars.

Grendene subsequently registered an IPANEMA word and design trademark with the USPTO pursuant to Certificate of Registration No. 4,345,916, issued June 4, 2013 (the "'916 Trademark"). The '543 trademark and the '916 trademark are collectively referred to herein as the "IPANEMA Trademarks."

27.    By 2007, defendants, whose efforts to sell "Ipanema" brand swimsuits had never met with much commercial success and whose sales had entered into a steep, steady decline after 1996, finally resulting in the liquidation of their assets in 2006, were actively trying to sell an assignment or license of their IPANEMA mark, as well as their THE GIRL FROM IPANEMA mark, to anyone who would have them. They did not succeed.

28.    After their swimsuit business dried up, defendants James W. Brady and Patricia M. Brady launched two new business ventures. They decided to become trademark trolls, suing every company subject to jurisdiction in the United States that used the term "Ipanema" in association with swimwear, suing 17 companies between 2007 and 2010 (and, for good measure, suing their own attorneys as well). They also founded a very expensive (and equally profitable) alcohol treatment center that they have used to bankroll their numerous lawsuits.

29.    Continuing their trademark troll lawsuits, on March 9, 2012, defendants James W. Brady and Patricia M. Brady filed suit against both Grendene USA, Inc. and Grendene S.A. alleging trademark infringement and related claims arising out of Grendene's use of one of its federally registered IPANEMA Trademarks. That action, filed in the Southern District of California, is styled *James W. Brady and Patricia M. Brady, Plaintiffs, v. Grendene USA, Inc. and Grendene S.A.*, No. 3:12-cv-0604-GPC-KSC (the "San Diego Action").

30.     Because they had not found anyone willing to license or purchase either their purported IPANEMA or THE GIRL FROM IPANEMA trademarks, defendants ceased their attempts to assign or license those purported marks the day they filed suit.

31.      On information and belief, defendants' long-time trademark maintenance counsel did not wish to participate in a fraud on the USPTO by filing false affidavits of continued use in commerce of the IPANEMA and THE GIRL FROM IPANEMA trademarks.  Such affidavits were necessary to prevent the marks from going abandoned.  Although defendants have four federal trademark registrations, all of which were being maintained by their long-time trademark maintenance counsel, defendants replaced him as trademark maintenance counsel only with respect to their purported IPANEMA and THE GIRL FROM IPANEMA marks.  They then engaged a lawyer willing to file their fraudulent affidavits of continued use, thereby making it possible for them to proceed with a frivolous action against Grendene in the San Diego Action.

32.     In further aid of their trademark troll suit against Grendene, defendants then embarked on a scheme to create the appearance of confusion to support their claims for relief.  Among other things, in 2014 they abandoned the www.IpanemaSwimWear.com Web site domain name and, instead, mimicked the Web site domain name that Grendene USA uses to market its IPANEMA sandals—www.IpanemaUSA.com—by adopting a new Web site domain name for themselves, at www.IpanemaUS.com.

33.     Defendants have since produced in the in San Diego Action a number of printouts of messages posted on social media sites that evidence the users' apparent misunderstanding concerning which company uses which Web site address.  Defendants have continued to do so notwithstanding that the discovery cut-off date has passed in the hope that they will be able to rely on them at trial as purported evidence of "confusion" to support their infringement claims.

True and correct copies of some of the social media posts produced by defendants are collectively attached as Exhibit C.

34.     Grendene USA has filed a complaint with the World Intellectual Property Organization ("WIPO") concerning that stratagem.  A true and correct copy of Grendene USA's WIPO complaint, without exhibits, is attached as Exhibit D, and is incorporated herein by reference.

35.     Further, defendants have falsely and misleadingly alleged on their social media Instagram account, with a link to it included on their www.IpanemaUS.com Web site, that they have sold both swimsuits and *footwear* since the *mid-1970s*.  The truth is that *Grendene's* predecessor owner of the IPANEMA mark, not plaintiffs, commenced selling footwear in the United States in the 1970s; defendants began doing business in the United States only in 1991; and defendants have never sold IPANEMA brand footwear.

36.     Further still, knowing that plaintiff GrendeneUSA was consistently using the domain name www.IpanemaUSA.com, defendants have included a link to a photograph of a bikini-clad woman with the legend "Ipanema USA" on their www.IpanemaUS.com Web site. A true and correct copy of defendants' misleading Instagram post is attached as Exhibit E and is incorporated herein by reference.

37.     In July 2014, defendants suddenly began exhibiting a purported 2015 line of bikinis at trade shows.  It was their first new line in a decade. When they did so, they displayed prominently Grendene's Ipanema Pattern Trademark in their booth at least at the Miami Swim Show trade show held at the Miami Beach Convention Center in Florida.  A copy of a photograph that truly and accurately depicts defendants' booth at that trade show is attached as Exhibit F.

38.     In deposition in the San Diego Action, defendant James Brady testified that, as a trademark owner, he wished to avoid consumer confusion and testified both that he would not want his business confused with any other business, and vice versa.  He was then asked why defendants had used Grendene's Ipanema Pattern Trademark in their booth at a trade show where Grendene was also exhibiting.  He testified that he had since discussed that with counsel.  (When his wife, defendant Patricia Brady—who is the president of defendant Made in Brazil, was asked the same questions in her deposition, she denied that the booth was used by defendants at all and claimed that the photograph must have been taken somewhere in Brazil.)

39.     By letter dated December 17, 2014 (a true and correct copy of which is attached as Exhibit G and incorporated herein by reference), Grendene USA asked that defendants cease and desist using the Ipanema Pattern Mark to promote defendants' products. In doing so, Grendene USA sought an assurance that defendants' infringing conduct would not be repeated.

40.     By letter from defendants' attorneys dated December 30, 2014 (a true and correct copy of which is attached as Exhibit H and incorporated herein by reference), defendants not only rejected that request (terming it "despicable" and in "bad faith"), but vowed "to seek to recover all expenses and attorneys' fees" incurred if Grendene were to bring a "frivolous" proceeding to protect its trademark from defendants' misuse of it.

41.     Because defendants refused to cease and desist from their unlawful use of Grendene's federally registered Ipanema Pattern Mark, Grendene became concerned that such use might resume.

42.     On February 13, 2015, defendants made a supplemental document production well after the close of fact discovery in the San Diego Action, their trademark troll suit against Grendene, that confirmed Grendene's fears.  Defendants produced images of hang tags and

advertising for both their Ipanema brand swimsuits and their The Girl from Ipanama brand products that make prominent use of the Ipanema Pattern Mark.   The artwork for a hang tag for The Girl from Ipanema brand products was designated as "Confidential—Attorneys' Eyes Only," meaning that it had not yet been used in commerce.   Several other hang tags that also had not been used were similarly given that designation, but hang tags that have been used were not so designated.   Significantly, the hang tag for defendants' Ipanema brand products was *not* designated for protection, thus indicating that it *has already been used*.   Defendants' Ipanema and The Girl from Ipanema brand products include swimsuits, dresses, cover-ups, shorts, sarongs, and skirts.

43.     Grendene USA thereafter sought to find out when the hang tag designs were created, whether the hang tags had already been used in commerce and, if so, when such use commenced, raising those questions with defendants' counsel by e-mail messages (a true and correct copy of which are attached as Exhibit I) sent February 17, 2015.

44.     By e-mail message dated February 19, 2015 (a true and correct copy of which is attached as Exhibit J), defendants' counsel declined to provide any information in response to those questions unless Grendene USA could point to specific discovery requests to which the information would be responsive.   In so responding, defendants' counsel implicitly admitted the obvious: because the hang tag designs were not included in the supplemental document productions made before discovery closed on December 30, 2014, they were not then in existence and have been created only since then.

45.     Defendants' counsel failed and refused to respond to a follow-up message from Grendene seeking information concerning the intended use of the hang tags, and provided no information whatsoever concerning the hang tags.   Attached as Exhibit K is a true and correct

copy of the follow up message.

46.     The hang tags, having just been created, must therefore have been intended for use this year.  Such inference is logical in that defendants sell products intended for use during the summer and retail stores have not yet begun offering their summer clothing lines.  Further, it is apparent that such use will be made in this Judicial District, inasmuch as defendants recently modified their Website to reflect that their products are now being sold at retail in Naples, Florida.  Attached as Exhibit L is a true and correct copy of the "retail store location" page on defendants' web site, printed on February 26, 2015.

## FIRST CLAIM FOR RELIEF

### (Common Law Trademark Infringement Against All Defendants)

47.     Grendene USA repeats and realleges the allegations set forth in paragraphs 1 through 46, above.

48.     Grendene's Ipanema Pattern Trademark is arbitrary as applied to sandals and therefore is inherently distinctive.

49.     Grendene's Ipanema Pattern Trademark has been extensively used commercially and in commerce by Grendene since January 31, 2011, and has achieved a strong secondary meaning as identifying Grendene USA's products.

50.     Defendants had actual knowledge of Grendene's commercial use in commerce of its Ipanema Pattern Trademark before stealing it to use in the conduct of their business.  Defendants have testified in another proceeding that they accessed Grendene USA, Inc.'s www.IpanemaUSA.com Web site many dozens of times in the years preceding the commencement of their unlawful use of Grendene's Ipanema Pattern Trademark.  Defendants admitted that the Ipanema Pattern Trademark appeared on the home page of that Web site and

appeared extensively throughout it.  Further, defendants testified that their purpose in accessing the Web site was to see what sandals Grendene was offering for sale.  Significantly, every one of those sandals bore the Ipanema Pattern Trademark.  Defendants also had the opportunity to view Grendene's sandals marketed using the Ipanema Pattern Trademark at trade shows.

51.     Defendants have implicitly acknowledged that Grendene's Ipanema Pattern Trademark and IPANEMA word mark have achieved a strong secondary meaning by copying and extensively using commercially and in commerce both marks to advertise their products sold under their Ipanema and The Girl from Ipanema brands.  Such unauthorized use of Grendene's Ipanema Pattern Trademark commenced before Grendene USA's federal registration of that mark issued.  By virtue of the continuous use commercially and in commerce of the Ipanema Pattern Trademark by Grendene since January 2011, Grendene developed a substantial goodwill in the Ipanema Pattern Trademark and the Ipanema Pattern Trademark enjoyed a strong secondary meaning among fashion-conscious, middle-class women between the ages of 15 and 45 who buy fashionable footwear, as well as among retail vendors who sell footwear to such consumers, as identifying Grendene USA's IPANEMA brand sandals.

52.     In suing Grendene for alleged trademark infringement, defendants have alleged that a likelihood of confusion is caused by the use of identical marks to denote and promote both their products and Grendene USA's products.  By deliberately associating their products with Grendene USA's products in every way they can, defendants are deliberately attempting to create a likelihood of confusion between their products marketed and advertised using the Ipanema Pattern Trademark without authorization and Grendene USA's products.

53.     Defendants' use of the Ipanema Pattern Trademark has been and is without the consent or approval of Grendene USA.

54.     Defendants' aforementioned acts have injured, and are continuing to injure, Grendene USA irreparably and have damaged Grendene USA in an amount to be determined at trial.

55.     Such irreparable injury will continue unless defendants are preliminarily and permanently enjoined by the Court from further violation of Grendene USA's rights, for which Grendene USA has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

**(Statutory Trademark Infringement Under 15 U.S.C. § 1114 Against All Defendants)**

56.     Grendene USA repeats and re-alleges the allegations of paragraphs 1 through 46 and 48 through 55, above.

57.     Grendene USA's Ipanema Pattern Trademark is federally registered, as reflected in Certificate of Registration No. 4,599,638.

58.     Grendene USA is informed and believes, and thereupon alleges, that defendants have already infringed the registered Ipanema Pattern Trademark by making it a prominent design element on product hang tags that defendants are using  commercially and in commerce or will use commercially and in commerce, to identify their goods.

59.     Defendants are planning to do so with the intent to cause confusion and mistake among consumers and the public, and to deceive consumers and the public into believing that defendants' products are associated with, or are sponsored or approved by, Grendene when they are not.

60.     Defendants' knowing and deliberate use of Grendene USA's registered Ipanema Pattern Trademark has been, or will be, made without the consent or approval of Grendene USA and thus defendants have willfully violated, or will willfully violate, 15 U.S.C. § 1114.

61.     Defendants' aforementioned acts have injured or will injure Grendene USA in an amount to be determined at trial.

62.     By their actions, defendants have irreparably injured, and are continuing to and will injure, Grendene USA irreparably.  Such irreparable injury will continue unless defendants are preliminarily and permanently enjoined by the Court from further violation of Grendene USA's rights, for which Grendene USA has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**(False Designation of Origin under 15 U.S.C. § 1125(a) Against All Defendants)**

63.     Grendene USA repeats and re-alleges paragraphs 1 through 46, 48 through 55 and 57 through 62, above, as though set forth at length.

64.     Defendants' use of Grendene USA's Ipanema Pattern Trademark commercially and in commerce in connection with its sale of its products in the same international trademark class as the products sold by Grendene USA makes defendants' use of the Ipanema Pattern Trademark confusingly similar to Grendene USA's use of its mark and has created or will create a false designation of origin by suggesting that defendants' products are offered, sold and/or promoted in commerce with Grendene's products.

65.     Defendants are doing so with the intent to compete unfairly with Grendene USA; trade upon Grendene's reputation by causing confusion and mistake among consumers and the public; mislead the Southern District of California trial court by manufacturing confusion between Grendene USA's products and defendants' products at issue in a legal proceeding that is *sub judice* (but which does not involve the Ipanema Pattern Trademark); and deceive the public into believing that defendants' products are associated with, or are sponsored or approved by, Grendene when they are not.

66.     Defendants had actual knowledge of Grendene USA's ownership and prior use of the Ipanema Pattern Trademark and further knew and know that their use of the Ipanema Pattern Trademark was and is without Grendene USA's consent, and therefore was and is in willful violation of 15 U.S.C. § 1125(a).

67.     Defendants' aforementioned acts have injured, and will continue to injure, Grendene USA and will and have damaged it in an amount to be determined at trial.

68.     By defendants' actions, Grendene USA has been irreparably injured, and continues to be irreparably injured.  Such irreparable injury will continue unless defendants are preliminarily, and permanently enjoined by this Court from further violation of Grendene USA's rights with respect to its Ipanema Pattern Trademark, for which Grendene USA has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Florida Deceptive and Unfair Trade Practices Act Violation Against All Defendants)

69.     Plaintiff Grendene USA repeats and re-alleges paragraphs 1 through 46, 48 through 55, 57 through 62, 64 through 68, above, as though fully set for at length.

70.     The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Section 501.204(1), prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

71.     Defendants' multiple efforts to associate themselves with plaintiff Grendene USA described herein, including through their uses of the Ipanema Pattern Trademark, constitute deceptive acts and are an unfair practice within the meaning of the FDUPTA.

72.     Defendants' efforts to associate themselves and their products with those of plaintiff Grendene USA are intended to and, based on the evidence adduced by the defendants

herein in the San Diego Action, have actually misled consumers and caused consumer confusion.

73.     Defendants' acts and pattern of conduct alleged herein have damaged and, unless defendants are restrained from continuing to engage in acts, or engaging in further acts, intended to associate defendants and defendants' products with plaintiff Grendene USA at its products in the minds of consumers, will further damage and irreparably injure Grendene USA, both in the minds of consumers and in its defense of the San Diego Action.

74.     Defendants' acts and practices described herein offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and to the fair administration of justice.   Plaintiff Grendene USA is therefore entitled to preliminary and permanent injunctive relieve restraining defendants' acts in violation of the FDUTPA, together with an award of its actual damages, attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### (Florida Common Law Unfair Competition Against All Defendants)

75.   Plaintiff Grendene USA repeats and re-alleges paragraphs 1 through 46, 48 through 55, 57 through 62, 64 through 68, and 70 through 74,  as though fully set forth at length.

76.     In marketing their products, defendants have engaged, and are engaging, in business conduct that is contrary to honest practice in commercial matters.

77.     Defendants' conduct and practices alleged herein are deceptive and fraudulent and have created, and are likely to continue to create, a probability of consumer confusion.  Plaintiff Grendene USA is therefore entitled to the entry of a preliminary and permanent injunction restraining defendants' acts of unfair competition and awarding such other and further relief as allowed by law.

**Prayer for Relief**

WHEREFORE, Grendene USA respectfully requests that the Court award it the following relief:

1.     That the Court enter a preliminary and permanent injunction prohibiting defendants, their agents, servants, employees, successors, assigns, and all persons in active concert or participation with any of them, who receive actual notice of the injunction by personal service or otherwise, from using its Ipanema Pattern Trademark in any way to identify, advertise, promote, market, display, or sell their goods; creating the impression that their goods originate from, or are associated with or approved by, Grendene, or are connected in any way with Grendene; unfairly competing with Grendene USA in any manner whatsoever;  causing a likelihood of confusion with Grendene, or injury to Grendene USA's business reputation, through the use of the Ipanema Pattern Trademark; or engaging in unfair acts or practices within the meaning of the Florida Deceptive and Unfair Trade Practices Act or in violation of the Florida common law of unfair competition;

2.     That the Court render a final judgment declaring that defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Grendene USA's Ipanema Pattern Trademark and finding that this case is exceptional;

3.     That the Court render a final judgment declaring that defendants have willfully violated the provisions of 15 U.S.C. § 1125(a) by falsely designating the origin of their goods and unfairly competing with Grendene USA through the marketing, sale, and promotion of their products using the Ipanema Pattern Trademark;

4.     That defendants be directed to file with this Court and serve on Grendene within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth

in detail the manner and form in which defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

5.      That defendants be required to account to Grendene for any and all profits derived by defendants and all damages sustained by Grendene USA by virtue of defendants' acts complained of herein;

6.      That defendants be ordered to pay to Grendene USA a reasonable royalty for defendants' past use of the Ipanema Pattern Trademark, subject to proof at trial; and

7.      That defendants be ordered to pay to Grendene its costs of suit, attorneys' fees, and treble damages as allowed by the Florida Deceptive and Unfair Trade Practices Act, the Florida common law of unfair competition, and/or the Lanham Act, 15 U.S.C. § 1117.

## JURY TRIAL DEMAND

Grendene hereby demands trial by jury on all issues that may be tried to a jury.

DATED this 14th day of April, 2015.

Respectfully submitted,

BEUSSE WOLTER SANKS & MAIRE, P.A.
390 North Orange Avenue
Suite 2500
Orlando, Florida 32801
Telephone: (407) 926-7700
Facsimile:   (407) 926-7720
Email: tsanks@iplawfl.com
Email: kwimberly@iplawfl.com
Attorneys for Plaintiff
GRENDENE USA, INC.

By:   /s/ Terry M. Sanks
     Terry M. Sanks
     Florida Bar No.: 0154430
     Kevin W. Wimberly
     Florida Bar No.: 057977

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court utilizing the CM/ECF system this 14th day of April, 2015 which will send a copy of the foregoing by electronic mail to: Richard E. Mitchell, Esquire, Jason A. Zimmerman, Esquire, GRAYROBINSON, P.A., P.O. Box 3068, Orlando, FL 32802-3068.

/s/ Terry M. Sanks
Attorney